OPINION
{¶ 1} Defendant-appellant/cross-appellee, Michael G. Cox, appeals a decision from the Warren County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee/cross-appellant, Estate Planning Legal Services ("EPLS"). We affirm in part, reverse in part, modify and remand.
 {¶ 2} On September 13, 2004, appellant, an attorney registered in the state of Ohio, entered into an agreement with EPLS, a professional legal corporation based in the state of *Page 2 
Michigan. EPLS is a provider of marketing and document services for estate lawyers. Pursuant to the terms of the agreement, EPLS would provide leads to appellant and set up appointments with potential clients interested in estate planning services. Thereafter, appellant would interview and advise individuals who qualified for the service. The contract required appellant to pay EPLS half of the fee paid by each client when he forwarded the application to EPLS. In turn, EPLS would provide appellant with the estate documents for the client. Appellant would make final preparations to the documents for final presentation to the client and, thereafter, meet with the client to execute the documents. The contract further stipulated that the contract could be cancelled by either party upon ten days written notice.
 {¶ 3} In early 2005, the relationship between the parties began to sour. According to appellant, he became increasingly dissatisfied with the quality of the client referrals. Appellant contends that EPLS would send him on "wild goose chases" to potential clients. Appellant complained that he would often be sent by EPLS to potential clients who were not at home at the appointment time, were unaware of an appointment, or did not qualify for the estate planning services due to the clients' limited assets. According to appellant, EPLS promised that only 25 percent of the leads would be bad; however, he claims that 55 percent of the appointments arranged by EPLS were "bad leads." Due to his dissatisfaction, appellant claims he engaged in some independent "marketing research" to identify potential clients by furnishing EPLS with various zip codes in Ohio with higher income residents.
 {¶ 4} Sometime in early 2005, appellant began retaining 100 percent of the fees paid by the clients referred to him by EPLS because, he claims, EPLS was not abiding by the terms of the contract by referring good leads and that he was entitled to compensation for the independent "marketing services" he provided to EPLS. According to EPLS, appellant continued to request referrals despite his dissatisfaction. Appellant then retained all of the fees, and, rather than pay or hold the fees for EPLS in his attorney IOLTA account, used the *Page 3 
money for his personal expenses. Appellant further claims that he did not pay EPLS because he was mitigating damages. On May 23, 2005, EPLS notified appellant that it was terminating the contract.
 {¶ 5} Subsequently, on October 13, 2005, EPLS filed suit against appellant for breach of contract, fraud, conversion and theft, breach of fiduciary duty, and unjust enrichment. In response, appellant filed similar claims against EPLS. EPLS moved for summary judgment. The trial court granted summary judgment to EPLS on their claims for breach of contract, breach of fiduciary duty, and conversion and theft. As a result, the trial court ordered appellant to pay actual damages in the amount of $11,718, treble damages pursuant to R.C. 2307.61(A)(1)(B)(ii) in the amount of $35,154, and attorney fees in the amount of $4,100. Appellant timely appeals, raising three assignments of error.
 Standard of Review {¶ 6} This court's review of a trial court's ruling on a motion for summary judgment is de novo. Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887. Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ. R. 56; Smith v. Five Rivers MetroParks (1999),134 Ohio App.3d 754, 760. The burden of demonstrating that there is no genuine issue of material fact is on the moving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made.Morris v. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact, and that the *Page 4 
moving party is entitled to judgment as a matter of law. Dresher v.Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT (MICHAEL G. COX OR COX) IN RULING THAT THE APPELLEE (ESTATE PLANNING LEGAL SERVICES OR EPLS) IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AGAINST APPELLANT WITH RESPECT TO THEIR CONVERSION AND THEFT CLAIM. THE TRIAL COURT ALSO ERRED IN AWARDING TREBLE DAMAGES TO EPLS FOR CONVERSION AND THEFT."
 {¶ 9} In his first assignment of error, appellant argues the trial court erred in granting summary judgment to EPLS on the claim for conversion and theft, and the resulting award of treble damages. Specifically, appellant first argues that EPLS is limited to recover only pursuant to a "liquidated damages clause" included in the contract and, as a result, EPLS is barred from bringing a claim for conversion and theft. Secondly, appellant claims that a finding of theft must be made by a trier of fact and cannot be determined on summary judgment. Finally, appellant argues the trial court erred by awarding treble damages.
 {¶ 10} Clearly, R.C. 2307.60 and R.C. 2307.61 recognize civil actions for victims of theft. R.C. 2307.60(A) states, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law * * *." Similarly, R.C. 2307.61 discusses civil actions for theft and damages that may be recovered.
 {¶ 11} The trial court found that EPLS was entitled to judgment as a matter of law because appellant committed "theft by deception" in violation of R.C. 2913.02(A)(3). That section proscribes that "[n]o person, with purpose to deprive the owner of property or *Page 5 
services, shall knowingly obtain or exert control over either the property or services * * * by deception." R.C. 2913.02(A)(3). "Deception" is defined as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).
 {¶ 12} In its decision, the trial court stated that "[e]ven though Cox denies that he told EPLS that he was holding their share of the client fees he collected in a separate account, he freely admits that he had never paid them for some measure of the successful leads and estate planning packages provided by EPLS. His deposition testimony is at best, obfusctory [sic] regarding the whereabouts of EPLS's share of those fees. His motion in opposition to Plaintiff's Motion for Summary Judgment offers nothing of evidentiary value to counter the simple fact that he continues to keep money belonging to EPLS. To this extent, EPLS is entitled to judgment as a matter of law that Cox has converted the fees to his own use, entitling them to treble damages under R.C. 2307.61(A)(1)(b)(ii)."
 {¶ 13} In its brief, EPLS states that "Cox misrepresents EPLS' claim [for theft], saying it involves theft of fees. Instead, EPLS claims that Cox used deception to steal its marketing services and documents." We find this statement to be quite problematic.
 {¶ 14} In the complaint's claim of "conversion and theft," EPLS alleged that "Cox has acted in bad faith and has converted funds belonging to EPLS; Defendant Cox's actions in converting $14,025 constitutes a Fourth Degree Felony in the state of Ohio under R.C. 2913.02." Clearly, the "theft" EPLS alleged was from appellant's conversion of fees, not theft of marketing services and documents. *Page 6 
 {¶ 15} Since the inception of this case, EPLS's claim for "conversion and theft" has been based on appellant's illusive control and use of the fees, which EPLS claims he withheld and converted for his own use. As noted above, the trial court agreed with EPLS's argument, finding that appellant committed "theft by deception" for his deceptive practices with the fees.
 {¶ 16} However, EPLS now appears to be pursuing a different legal theory. EPLS now asserts that appellant committed theft using "deception to steal marketing and document services" and EPLS accuses appellant of mischaracterizing the claim. However, it is EPLS that has changed the character of the claim. Nowhere in the complaint or the motion for summary judgment does EPLS argue that the "theft or conversion" claim is based upon appellant deceptively stealing marketing or document services.
 {¶ 17} "It is axiomatic that a party cannot raise new issues or legal theories for the first time on appeal. Failure to raise an issue before the trial court results in waiver of that issue for appellate purposes."Wohl v. Swinney, Butler App. No. CA2006-05-123, 2007-Ohio-592, ¶ 11; see, also, State ex rel. Hilltop Basic Resources, Inc. v.Cincinnati, Slip Opinion No. 2008-Ohio-1966, ¶ 19. EPLS's argument was not raised at the trial level.
 {¶ 18} In light of the argument presented by EPLS and a review of the record, we are unconvinced that EPLS has sufficiently demonstrated that no genuine issue of material fact exists regarding the theft claim. The evidence presented by EPLS does not show that appellant deceptively requested marketing or document services "with the purpose to deprive EPLS of property or services" so as to entitle EPLS to judgment as a matter of law.
 {¶ 19} Further, we disagree with the trial court's decision because a genuine issue of material fact exists regarding the mens rea for theft. Specifically, the trial court stated that "at best" appellant was "obfusctory" [sic] regarding the fees and that appellant offered "nothing *Page 7 
of evidentiary value to counter the simple fact that he continues to keep the money." However, the trial court made no finding that appellant knowingly obtained or exerted control over the fees by deception. Appellant freely admitted failing to pay the disputed $11,718 in fees to EPLS. A genuine issue of fact remains because this admission does not prove the requisite mens rea for theft by deception. Rather, the evidence demonstrates that appellant believes a fee dispute exists between the parties due to his allegations of nonperformance by EPLS, not that he knowingly retained the funds by deception.
 {¶ 20} Accordingly, appellant's first assignment of error is sustained. Further, the resulting award of treble damages by the trial court in favor of EPLS for its theft claim is reversed. We will address the award of attorney fees for the theft claim under EPLS's cross-assignment of error.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT (MICHAEL G. COX OR COX) IN RULING THAT THE APPELLEE (ESTATE PLANNING LEGAL SERVICES OR EPLS) IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AGAINST APPELLANT WITH RESPECT TO THEIR BREACH OF CONTRACT CLAIM, AND THE TRIAL COURT ERRED ALSO WITH RESPECT TO THE APPELLANT'S COUNTERCLAIM FOR BREACH OF CONTRACT WHICH IT FAILED TO RULE ON OR CONSIDER IN ITS REVIEW."
 {¶ 23} In his second assignment of error, appellant argues the trial court erred by granting EPLS summary judgment on its breach of contract claim. Specifically, appellant claims that he did not breach the contract because EPLS first breached the contract. Appellant alleges that EPLS only provided 45 percent good leads when it guaranteed 75 percent good leads, used mail fraud to entice senior citizens, sent appellant on "wild goose *Page 8 
chases," and asked appellant to perform the "marketing" functions that EPLS was required to perform under the contract. Further, appellant argues the trial court erred by failing to rule on his counterclaim for breach of contract.
 Civ. R. 56 Evidence {¶ 24} Appellant sets forth numerous accusations against EPLS as reasons for failing to pay. Appellant urges this court to review the deposition of Ren Benczkowski, an attorney and the president of EPLS, which he has attached to his appellate brief. Appellant has also attached a list of potential "trial exhibits," which he will purportedly introduce as evidence at a trial in this matter. The list identifies memos and documents that appellant received from EPLS, the list of zip codes appellant supplied to EPLS, and various spreadsheets compiled by appellant showing the results of his appointments including the amount of bad leads. Appellant argues the trial court erred by failing to consider these documents and review the deposition. Moreover, appellant argues that this evidence demonstrates that he was justified in withholding the fees because he was "mitigating" his damages.
 {¶ 25} In a summary judgment context, a court's review is limited to proper Civ. R. 56 evidence. Civ. R. 56(C). Under Civ. R. 56(C), the evidence which may be considered when ruling on a motion for summary judgment are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." (Emphasis added.) These restrictions exist with respect to materials which are submitted both in support of and in opposition to a motion for summary judgment.
 {¶ 26} Where documents fall outside the rule, the correct method for introducing such items is to incorporate them by reference into a properly framed affidavit. Martin v. Central Ohio Transit Auth. (1990),70 Ohio App.3d 83, 89. Civ. R. 56(E) also states that "sworn or *Page 9 
certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."
 {¶ 27} There is no evidentiary support for appellant's accusations in the record. The deposition upon which appellant relies was never filed in this matter. Further, the numerous documents appellant cites have also not been properly submitted as they are unsupported by a properly filed affidavit. Accordingly, we cannot consider these documents because they are not proper Civ. R. 56 evidence.
 {¶ 28} Nevertheless, appellant urges this court to consider his evidence in the interest of justice and due to the fact that he is an attorney, acting pro se, with no previous litigation experience.
 {¶ 29} Civ. R. 56 sets forth specific criteria that a court must follow in a summary judgment context, including the evidence that may be considered. A court may only consider proper Civ. R. 56 evidence and we will not deviate from these rules. Because, as we noted earlier, appellant has failed to properly file the exhibits and deposition upon which he relies, this evidence cannot be considered by this court and the trial court did not err for failing to review it. State ex rel.Hilltop Basic Resources, 2008-Ohio-1966 at ¶ 20.
 Breach of Contract {¶ 30} Our ultimate inquiry for this assignment of error is whether the trial court erred by granting summary judgment to EPLS on its breach of contract claim. As a result, we must determine if a genuine issue of material fact exists regarding whether the parties executed a valid contract and whether appellant breached the contract by failing to turn over fees earned from clients referred to him by EPLS.
 {¶ 31} Appellant claims the contract itself was ambiguous and vague, "especially as to the duties imposed on EPLS." Further, appellant argues he was justified in failing to pay *Page 10 
EPLS because he was "mitigating" his damages for the reasons listed above.
 {¶ 32} Generally, in order for a valid contract to exist, there must be a "meeting of the minds" on the essential elements of the agreement, which is usually demonstrated by an offer, acceptance and consideration.Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. A breach of contract occurs upon any failure without legal excuse to perform a contractual duty. See Aluminum Line Products Co. v. Brad Smith Roofing Co.,Inc. (1996) 109 Ohio App.3d 246.
 {¶ 33} Clearly, the parties intended to enter into an agreement as evidenced by the one-page document titled "contract" signed by the parties. Further, by his own admission, appellant is an experienced businessman and an attorney admitted to practice in Ohio with an "expertise" in contracts.
 {¶ 34} Unquestionably, the parties agreed to work together to sell estate planning services in Ohio and conducted business in that capacity for several months. Appellant agreed in the contract to "use EPLS as his sole and exclusive agent for the marketing, sale and preparation of an Estate Planning Package * * * for any clients referred to COX by EPLS in the State of Ohio." The contract set forth general duties and responsibilities for both parties requiring appellant to interview potential clients, forward the appropriate information to EPLS for preparation of the estate documents, and deliver, explain, review and complete the documents with the clients. The contract obligated that "COX will pay Fifty Percent (50%) of the fees paid by said referred Trust Clients to EPLS as consideration for the Marketing and Document Preparation done on behalf of COX."
 {¶ 35} The evidence presented by EPLS demonstrates, and appellant freely admits, that appellant failed to pay $11,718 in fees owed to EPLS.[1] Appellant advances multiple *Page 11 
excuses for failing to pay the fees, but for reasons discussed above, appellant has not provided any proper Civ. R. 56 evidence to substantiate his accusations against EPLS; specifically, that EPLS breached the contract first, or that he was somehow "mitigating" damages by withholding fees.
 {¶ 36} Appellant further claims that the contract was "unconscionable" because there was no meeting of the minds; however, the contract allows either party to cancel the contract for any reason upon ten days written notice. As the trial court properly stated, "If Cox was unhappy with his arrangement with EPLS, * * * he could give ten days written notice that he wanted out of the contract. Instead of terminating the relationship with EPLS, Cox exacerbated his discontent by clinging to a business arrangement that was not working to his satisfaction. Keeping funds that he was required by the terms of his agreement to turn over to EPLS is inexcusable on the ground that EPLS sent him poor leads that cost him time and money * * * if he was spending all his time chasing after fruitless leads, he could have terminated his agreement with EPLS."
 {¶ 37} We agree with the trial court's conclusion that there is no genuine issue of material fact that appellant breached the contract by failing to pay EPLS the fees due pursuant to the agreement.
 {¶ 38} Finally, in response to appellant's contention that the trial court "failed to rule on or consider" his counterclaim for breach of contract, appellant never moved for summary judgment on his counterclaims. Accordingly, the trial court did not err by not ruling on his claim for breach of contract.
 {¶ 39} Appellant's second assignment of error is overruled.
 {¶ 40} Assignment of Error No. 3:
 {¶ 41} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT *Page 12 
(MICHAEL G. COX OR COX) IN RULING THAT THE APPELLEE (ESTATE PLANNING LEGAL SERVICES OR EPLS) IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AGAINST APPELLANT WITH RESPECT TO THEIR BREACH OF FIDUCIARY DUTY CLAIM AGAINST COX."
 {¶ 42} In his third assignment of error, appellant argues the trial court erred in granting summary judgment in favor of EPLS on its breach of fiduciary duty claim. Once again, appellant repeats many of the unsubstantiated claims regarding EPLS and cites the un-filed deposition of Ren Beczkowski. Appellant mentions that he was simply an "independent contractor" of EPLS.
 {¶ 43} Moreover, appellant presents an argument based on ethical considerations. First, appellant acknowledges that in Ohio an arrangement between attorneys to split fees is an ethical violation if the arrangement is not disclosed to the client in writing.[2] In an attempt to avoid a potential disciplinary proceeding, appellant argues that he was not fee-splitting with EPLS. Rather, appellant claims "EPLS was a vendor" that sold him marketing and client-referral *Page 13 
services in exchange for 50 percent of the fees he collected. Appellant further argues, he was not collecting fees for EPLS because the "clients were his only as required by Ohio law * * * EPLS could not possibly collect fees from [appellant's] clients as this would be unauthorized practice of law."[3] Ultimately, appellant attempts to argue that the contract is void and he owes no fees or fiduciary duty to EPLS, because, as an attorney in Ohio, he cannot ethically split fees.
 {¶ 44} To succeed on a claim for breach of fiduciary duty, a party must show: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. Strock v. Presnell (1988),38 Ohio St.3d 207, 217.
 {¶ 45} Appellant may claim that he cannot ethically split fees with EPLS; even though he contractually obligated himself to pay 50 percent of the fees collected. Regardless of whether appellant was splitting fees with EPLS or, as he claims, "paying" EPLS for their marketing and document services, there is no genuine issue of material fact that a fiduciary relationship existed between appellant and EPLS. Under the terms of the contract, EPLS supplied appellant with estate documents and in turn, trusted appellant to deliver its 50 percent share of fees. When appellant failed to deliver EPLS its share of the fees, he breached his fiduciary duty. All of his claims to the contrary regarding bad leads, uncompensated marketing services, or that this was not a fee-sharing arrangement are unsubstantiated by the deficient record.
 {¶ 46} Appellant's third assignment of error is overruled. *Page 14 
 {¶ 47} Cross-assignment of Error:
 {¶ 48} "THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING FEES OF ONLY $4,100 WITHOUT ADDRESSING THE FACTORS LAID OUT IN DR 2-106(B)."
 {¶ 49} In its cross-assignment of error, EPLS disputes the award of attorney fees by the trial court. EPLS argues that it is entitled to $67,806.90 in attorney fees, representing double its lodestar. EPLS contends that "when awarding fees that deviate from the lodestar, a court must address the factors in DR 2-106(B), and failure to do so is an abuse of discretion." Accordingly, EPLS claims the trial court abused its discretion because it failed to discuss the factors of DR 2-106(B) as required by Bittner v. Tri-County Toyota, Inc. (1991),58 Ohio St.3d 143.
 {¶ 50} Generally, regardless of who prevails in a lawsuit, each party is responsible for his or her own attorney fees. 30 Ohio Jurisprudence 3d (1999) 117, Damages, Section 91. A prevailing party, however, may be entitled to attorney fees if a statute so provides or if they are able to demonstrate that a party against whom the fees are sought acted in bad faith. Id.; see, also, Sladoje v. Slettebak (1988),44 Ohio App.3d 206. In Bittner, the Ohio Supreme Court discussed calculation of attorney fees. The court stated that to determine a "reasonable" award of attorney fees a "trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106."[4] Bittner at 145.
 {¶ 51} In its decision, the trial court clearly considered and discussed the factors delineated in DR 2-106(B). The trial court listed the factors in its decision and clearly found significant overbilling by EPLS's trial counsel. The court stated, "[testimony at the hearing *Page 15 
indicated that the Phillips Law Firm approached this case as a simple collection case. Yet in their invoice they billed $4,625 for preparation of jury instructions." The court specifically cited other instances of overbilling including "1.2 hours to obtain a deposition date and arranging for a court reporter," which was billed for a total of $775.
 {¶ 52} Moreover, the trial court found that EPLS was only entitled to attorney fees on its claims for breach of contract and conversion and theft, not for the breach of fiduciary duty claim. After reviewing each billing entry and determining "the reasonable number of hours expended on the litigation, multiplied by a reasonable fees [sic] associated with bringing this case," the trial court found that $6,150 was a reasonable figure for attorney fees in this case. However, since the trial court found that EPLS could only recover attorney fees on two claims, it awarded two-thirds of the attorney fees for a total of $4,100.
 {¶ 53} In light of our disposition of appellant's first assignment of error, addressing the theft claim, the trial court's award of attorney fees for that claim is reversed. Any further discussion of the trial court's calculation of attorney fees for the theft claim would be moot.
 {¶ 54} As to the attorney fees for breach of contract, the trial court was quite clear in its consideration and calculation of attorney fees. Accordingly, after review of the record and the trial court's decision on damages, the trial court did not abuse its discretion in its calculation of the attorney fees.
 {¶ 55} EPLS's cross-assignment of error is overruled. Accordingly, we modify the award of attorney fees in favor of EPLS to $2,050 to reflect the amount it is entitled to for the breach of contract claim.
 {¶ 56} Judgment affirmed in part, reversed in part, modified and remanded.
BRESSLER and POWELL, JJ., concur.
[1] Appellant admitted in his deposition that he received fees for estate planning documents from clients of EPLS, which he did not pay. Also, EPLS has produced the bank records from 9/1/04 to 9/1/05 on an account appellant held with Fifth-Third Bank. Further, the parties stipulated that the amount appellant withheld from EPLS was $11,718.
[2] {¶ a} There is no evidence that the arrangement between appellant and EPLS was disclosed to any of the clients referred to appellant by EPLS. DR 2-107 of the Code of Professional Responsibility applies to fee-sharing arrangements among lawyers. On February 1, 2007, the Code of Professional Responsibility was superseded by the Rules of Professional Conduct. Prof. Cond. Rule 1.5(e) is the corresponding rule to DR 2-107. The events at issue in this case occurred while the code was in effect.
{¶ b} DR 2-107(A) of the Code states, "Division of fees by lawyers who are not in the same firm may be made only with the prior consent of the client and if all of the following apply:
{¶ c} "(1)The division is in proportion to the services performed by each lawyer or, if by written agreement with the client, all lawyers assume responsibility for the representation;
{¶ d} "(2) The terms of the division and the identity of all lawyers sharing in the fee are disclosed in writing to the client;
{¶ e} "(3) The total fee is reasonable."
{¶ f} Prof. Cond. Rule 1.5(e) states, "Lawyers who are not in the same firm may divide fees only if all of the following apply:
{¶ g} "(1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the client;
{¶ h} "(2) the client has given written consent after full disclosure of the identity of each lawyer, that the fees will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation;
{¶ i} "(3) except where court approval of the fee division is obtained, the written closing statement in a case involving a contingent fee shall be signed by the client and each lawyer and shall comply with the terms of division (c)(2) of this rule;
{¶ J} "(4) the total fee is reasonable."
[3] The agreement between EPLS and appellant was nothing more than a thinly-veiled fee-splitting arrangement. After reviewing the record, there appear to be numerous potential ethical violations committed by both parties: the agreement in this case, including the fee-splitting arrangement; the business practices of EPLS, encouraging its contracted attorneys to "sell" trust packages to seniors that do not need sophisticated estate planning services; and the unauthorized practice of law. It is not within this court's authority to conduct hearings or make findings concerning attorney misconduct, nor are such issues before the court in this matter. These matters are for the disciplinary counsel.
[4] DR 2-106 is a rule from the Ohio Code of Professional Responsibility concerning fees for legal services. The code has since been superseded by the Ohio Rules of Professional Conduct. Prof. Cond. Rule. 1.5 applies to fees and expenses for legal services. The factors listed in both the code and professional rules are virtually identical. *Page 1