OPINION
{¶ 1} Petitioner-appellant, L.A.D., appeals a decision of the Butler County Court of Common Pleas, Probate Division, in an adoption proceeding requiring consent of the legal father.
 {¶ 2} The minor child, A.J.B., was born in Fairfield on March 13, 2005. A.J.B.'s mother was unmarried at the time of conception and unmarried at the time A.J.B. was born. No father was identified on the certificate of birth. The mother began receiving county health benefits. As a result, the Butler County Child Support Enforcement *Page 2 
Agency commenced the administrative process to determine paternity of the minor child. The father, respondent-appellee, cooperated in the process, paternity was established, and the agency issued an administrative order of paternity on August 15, 2005. The agency issued a subsequent order requiring father to pay $50 per month for child support and provide medical insurance for A.J.B. However, the agency suspended the child support component of the order.
 {¶ 3} Following telephone communications between the parents, father first visited A.J.B. in November 2005. Sporadic visitation occurred thereafter with father primarily visiting around holidays or A.J.B.'s birthday. During visitation, father was often accompanied by his mother, A.J.B.'s grandmother, and his other daughter, A.J.B.'s half-sister. The final visit occurred in April 2007. According to father, he attempted to contact A.J.B.'s mother on multiple occasions thereafter via telephone or attempting unannounced visits at mother's house, but mother failed to return the calls and father was unable to see the child. Despite father's testimony, the trial court found that the "failure of [father] to communicate with A.J.B. was not as a result of any significant interference or discouragement on the part of A.J.B.'s mother, or on the part of petitioner. Since the date of the child's birth, the efforts of [father] to communicate with his child have been inconsequential."
 {¶ 4} On April 4, 2008, father filed a petition for allocation of parental rights and responsibilities in the Butler County Juvenile Court. Mother was served with the summons on May 16, 2008. Mother then married appellant on June 11, 2008. On June 16, 2008, appellant filed a petition for adoption. Appellant urged that father's consent was unnecessary to proceed with the adoption since father failed to communicate with the child for at least one year preceding the adoption petition. Following a hearing on the matter, the probate court found that father's petition for allocation of parental rights *Page 3 
and responsibilities was a "significant attempt" by father to communicate with A. J.B. As a result, the court held that father's consent was required for appellant to pursue the adoption. Appellant timely appeals, raising two assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED BY FINDING THAT PETITIONER FAILED IN HIS BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE FAILURE OF [FATHER] TO COMMUNICATE WITH A.J.B., DURING THAT PORTION OF THE REQUISITE ONE YEAR PERIOD AFTER APRIL 4, 2008, WAS WITHOUT JUSTIFIABLE CAUSE."
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "THE TRIAL COURT FAILED BY FINDING PETITIONER FAILED IN HIS BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE FAILURE OF [FATHER] TO PROVIDE FOR THE SUPPORT AND MAINTENANCE OF A. J.B. AS REQUIRED BY LAW OR JUDICIAL DECREE, DURING THAT PORTION OF THE REQUISITE ONE YEAR PERIOD AFTER APRIL 4, 2008, WAS WITHOUT JUSTIFIABLE CAUSE."
 {¶ 9} Consent to adoption is governed by R.C. 3107.07(A), which provides, "[a] parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."[1] *Page 4 
 {¶ 10} In both assignments of error, appellant argues the trial court erred by finding that consent of the father is necessary to proceed with the adoption. Each assignment of error addresses a separate evidentiary requirement under R.C. 3107.07(A). Specifically, appellant argues in his first assignment of error that father failed to communicate without justifiable cause with A.J.B. during the requisite one-year period. Similarly, in the second assignment of error, appellant argues father failed to provide support and maintenance over the same period.
 Burden of Proof and Standard of Review {¶ 11} "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368. See, also, In re Adoption ofBovett (1987), 33 Ohio St.3d 102, 104. "No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." Id.
 {¶ 12} "[I]ssues regarding failure of communication and lack of justifiable cause are questions of fact for the probate court." Id. at 368. "The probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." Id. at 367. "Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof. The determination of the probate court should not be *Page 5 
overturned unless it is unsupported by clear and convincing evidence." Id. at 368.
 Failure to Communicate {¶ 13} The leading case defining the R.C. 3107.07(A) "failure to communicate" requirement is Holcomb. In Holcomb, the Ohio Supreme Court found that failure to communicate is sufficient to authorize adoption without consent only if there is "a complete absence of communication" for the statutorily defined one-year period. 18 Ohio St.3d at 367.
 {¶ 14} Subsequent appellate decisions have further clarified the standard. "Since R.C. 3107.07(A) does not define the verb `to communicate,' it must be given its ordinary and accepted meaning."In re Adoption of Jordan (1991), 72 Ohio App.3d 638, 644. "The word `communicate' has been defined as `to make known,' `to inform a person of, convey the knowledge or information of * * * to send information or messages * * *.'" Id., quoting Webster's Third New International Dictionary (1986) 460. "The essence of communication is the passing of a thought from the mind of one person to the mind of another." In reAdoption of Hedrick (1996), 110 Ohio App.3d 622, 626. A message is not received or successfully passed to the mind of another is not communicated, nor does an unsuccessful attempt to communicate constitute communication. In re Adoption of Bradford (1985), 18 Ohio St.3d 361,369-370 (communication requirement not satisfied where father made one unsuccessful attempt to communicate but was turned away having arrived at the mother's house without advanced notice or prior arrangements).
 {¶ 15} In this case at bar, we must determine whether the petition to allocate parental rights and responsibilities filed by a predominately absent biological father *Page 6 
satisfies the communication requirement. Under the facts of this case, we find that the father's actions satisfy the standard.
 {¶ 16} The Supreme Court of the United States has recognized that natural parents have a fundamental liberty interest in the care, custody and management of their children. Stanley v. Illinois (1972),405 U.S. 645, 651, 92 S.Ct. 1208; Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388; Troxel v. Granville (2000), 530 U.S. 57, 65,120 S.Ct. 2054. A parent's right to raise a child is an essential civil right.In re Murray (1990), 52 Ohio St.3d 155, 157. An adoption permanently terminates the parental rights of a natural parent. In re Adoption ofReams (1989), 52 Ohio App.3d 52, 55. Thus, courts must afford the natural parent every procedural and substantive protection allowed by law before depriving the parent of the right to consent to the adoption of his or her child. In re Hayes (1997), 79 Ohio St.3d 46, 48.
 {¶ 17} Appellant cites In re Adoption of Doyle, Ashtabula App. Nos. 2003-A-0071, 2003-A-0072, 2004-Ohio-4197; and In re Serre (P.C. 1996),77 Ohio Misc.2d 29, in support of his position that filing a petition seeking the allocation of parental rights and responsibilities does not satisfy the communication requirement of R.C. 3107.07(A). Yet, theDoyle and Serre cases offer differing factual situations when compared to the case at bar.
 {¶ 18} The relationship between the parents in Doyle produced two children. In 2000, the father was granted custody of the couple's daughter. Id. at ¶ 3. The couple's son remained in foster care following their separation, but the father eventually gained full custody. Id. at ¶ 2 and ¶ 16. The father married and his new wife filed an adoption petition, seeking to adopt both children in May 2002. Id. at ¶ 5. During the statutory one-year period, the mother was incarcerated for several months and a restraining order for the protection of the daughter was issued against her. Id. at ¶ 14. She also failed to *Page 7 
make support payments. Id. at ¶ 6. Once released from jail, the mother wrote a letter to the Ashtabula County Juvenile Court, requesting visitation with her son. Id. at ¶ 5. In a divided decision, the majority in Doyle ruled that the mother's consent was not required to proceed with the adoption. Id. at 20. In so holding, the majority held that the mother's informal letter to the court requesting visitation "cannot be deemed communication with the child, as the child remains unaware that the parent is attempting meaningful communication." Id. at ¶ 19.
 {¶ 19} Appellant's primary support in this matter is theSerre decision written by the Cuyahoga County Court of Common Pleas, Probate Division. In Serre, the child's parents divorced in 1990 and the mother remarried on October 15, 1993. 77 Ohio Misc.2d at 31. At the time of the divorce, the parties agreed to a supervised visitation schedule for the father, but the father rarely exercised his visitation rights. Id. During the year preceding the adoption petition, the father never made contact or communicated with the child. Id. However, towards the end of the statutory one-year period, the father filed a motion to show cause against the mother for failure to comply with the visitation order. Id. The stepfather filed a petition for adoption less than one month later. Id. Ultimately, the father voluntarily dismissed the show cause motion. Id. The Serre court concluded that the father's "motion to show cause to enforce his visitation rights * * * does not constitute a communication with the child" and his consent was not required for the stepfather to proceed with the adoption. Id. at 35. Appellant urges, based upon Serre, that filing a petition in the juvenile court does not constitute communication with the child.
 {¶ 20} In their briefs, both parties in this matter continue to argue the facts of the case. The father urges that, on numerous occasions over the one-year period, he attempted to coordinate visitation time with A.J.B., but the mother ignored his calls and *Page 8 
was otherwise unresponsive. In opposition, appellant contests father's alleged attempts, claiming that the mother never received any requests for visitation. Further, appellant continually reiterates the probate court's findings that father's failure to communicate was "not the result of any significant interference or discouragement" by the mother and that any efforts by the father to communicate were "inconsequential." We accept these findings of fact by the probate court, but they have little bearing on our analysis or the ultimate outcome of our decision.
 {¶ 21} The important distinctions between Doyle and Serre from the case at bar develop due to the timing of the proceedings. TheDoyle and Serre cases primarily resemble a set of events that result from a divorce situation. In both cases, the parents split and the custodial parent remarried. For a prolonged period, the noncustodial parent neglected his or her support obligation and did not exercise visitation. At some point, the noncustodial parent wished to reestablish a relationship with the child, seeking assistance from the court, but the new spouse filed an adoption petition.
 {¶ 22} In contrast, the parents in this case were never in a marital or long-term relationship. A child was conceived from the short-lived relationship. The father never had actual knowledge of the pregnancy and, upon learning of the birth of the child, paternity was established, but the father remained distant and uninvolved. These facts are largely irrelevant.
 {¶ 23} Rather, it is the timing of the proceedings with the court in relation to the marriage and filing of the adoption petition that distinguishes this case from Doyle and Serre. The father in this case wished to assume responsibility for the child and establish a relationship. As a result, he filed a petition to allocate parental rights and responsibilities. The mother received notice of the petition and a pending hearing. With knowledge of the pending petition, the mother married shortly thereafter and the *Page 9 
stepfather immediately filed a petition for adoption; claiming that the father's consent is unnecessary since there has been no communication for more than a year.
 {¶ 24} This is a completely distinct situation from Doyle andSerre. In those cases, the custodial parent had been remarried for a period of time before the delinquent noncustodial parent wished to re-establish parental rights and duties. In the case at bar, however, the mother was notified that the father wished to establish rights and responsibilities, the mother then married, and an adoption petition was filed immediately thereafter to extinguish the father's parental rights before any hearing on the father's motion could be conducted.
 {¶ 25} We remain sympathetic to the mother's position in this matter; having raised her daughter without any contribution or assistance, and with minimal visitation, from the biological father. She has married an individual who has, more than likely, been much more involved in her child's life than the biological father and probably believes would be a better parent than the biological father. However, the father has constitutional protections as a biological parent.
 {¶ 26} It would be a gross miscarriage of justice to allow appellant, with knowledge of the father's pending petition, to seek adoption without consent and extinguish the biological father's parental rights by virtue of appellant's five-day-old marriage. Further, despite the fact that she has raised A.J.B. alone, it would be equally impermissible to allow the mother to receive notice of the biological father's intent to assume parental responsibility and preemptively terminate his parental rights due to her marriage, when the father in this case is pursuing his parental responsibilities through the proper procedure.
 {¶ 27} The trial court's decision is supported by clear and convincing evidence. The father filed his petition to allocate parental rights and responsibilities on April 4, *Page 10 
2008, within the one-year statutory period under R.C. 3107.07(A). A hearing was set to establish father's obligations. With knowledge of the hearing, the mother married appellant and appellant immediately filed a petition for adoption, attempting to terminate the biological father's parental rights. The biological father's attempt and willingness to assume parental rights and responsibilities in this situation satisfies the communication requirement.
 Maintenance and Support {¶ 28} Under his second assignment of error, appellant disputes the probate court's failure to find the second requirement under R.C. 3107.07(A), that appellant failed to provide support and maintenance for the child for the preceding one-year period.
 {¶ 29} Following the paternity determination and filing of the order for child support in this case, father's support obligation was suspended.[2] The order of suspension was signed by the mother. Appellant responds by claiming that, regardless of whether any formal support order existed, the father remained obligated to support his child.
 {¶ 30} However, the obligation of the father in this case was unclear due to the original suspension of support, which was implicitly agreed to by the mother. By filing his petition to allocate parental rights and responsibilities, the father was attempting to remove the suspension and determine his support obligation. Father's petition, filed before the marriage and the subsequent adoption petition, supports his argument that he wished to establish a relationship with A.J.B. and assume financial responsibility. *Page 11 
 {¶ 31} Based upon our resolution of the first assignment of error, appellant has failed to satisfy his burden under R.C. 3107.07(A). Accordingly, it is unnecessary for this court to further analyze the second requirement.
 {¶ 32} Appellant's first and second assignments of error are overruled.
 {¶ 33} Judgment affirmed.
BRESSLER, P.J., and YOUNG, J., concur.
[1] We note that the standard set forth in R.C. 3107.07(A) has changed, effective April 7, 2009. Rather than "failed without justifiable cause to communicate with the minor," the new standard now provides that consent is unnecessary if "the parent has failed without justifiable cause to provide more than de minimis contact with the minor" for at least one year. Since the legislature did not expressly provide for the retroactive application of the new version of R.C. 3107.07(A), we will apply the former "failure to communicate" standard rather than the new "de minimis contact" standard. Wilson v. AC S,Inc., 169 Ohio App.3d 720, 2006-Ohio-6704, ¶ 69, citing State v.Cook, 83 Ohio St.3d 404, 410, 1998-Ohio-291.
[2] The order suspending child support provides, "[t]he child support component in this order is hereby suspended. No other provisions of this order, including the provisions regarding health insurance, are suspended." The record is unclear regarding payment of the health insurance obligation. Further, appellant never mentions father's health insurance obligation, nor claims in support of his second assignment of error that the father failed to provide the insurance. *Page 1