## In re ADOPTION OF W.C., n.k.a. W.B.

[Cite as *In re Adoption of W.C.*, 189 Ohio App.3d 386, 2010-Ohio-3688.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2010–02–020.

Decided Aug. 9, 2010.

Jason A. Showen, for appellee.

Neal W. Duiker, for appellant.

POWELL, Judge.

{¶ 1} Petitioner-appellant, Isaac Crabtree, appeals a decision of the Warren County Court of Common Pleas, Probate Division, finding that his consent as the natural father of W.C., now known as W.B., was not required for the child's adoption. For the reasons outlined below, we reverse the decision of the trial court and remand.

{¶ 2} The evidence presented at the adoption hearing on February 2, 2010, established the following relevant facts. W.C. was born on August 7, 2003. His mother, Tina Bullock, and father, appellant, were married at the time of his birth and resided in Tennessee. Appellant testified that the parties divorced in the fall of 2005 while he was stationed in Korea as a member of the United States military. Pursuant to the terms of the divorce decree, Tina Bullock was designated the custodial parent of W.C., and appellant was awarded visitation rights. In July 2006, Tina Bullock married petitioner-appellee, Brian Bullock, and subsequently moved with W.C. from Tennessee to Ohio.

{¶ 3} Appellant was deployed to Okinawa, Japan, on or about December 9, 2008. Nearly one year later, on December 2, 2009, appellee filed a petition to adopt W.C. In the petition, appellee claimed that appellant's consent to W.C.'s adoption was not required because he had failed without justifiable cause to provide more than de minimis contact with W.C. for a period of at least one year immediately preceding the filing of the petition.

{¶ 4} Appellant obtained a short military leave and appeared pro se at the February 2, 2010 hearing to contest the adoption. He testified that he attempted to communicate with W.C. while stationed in Japan, but his efforts were hindered by the 15–hour time difference and the fact that he was working approximately 15 hours per day. He further testified that from December 2, 2008, through December 2, 2009, he made approximately five or six attempts to call W.C., but was unable to speak to him. Appellant claimed that he attempted to send W.C. cards and letters and that he had sent W.C. a Christmas gift in December 2008. Both Tina Bullock and Brian Bullock testified that W.C. did not receive any written communications or gifts from appellant during the one-year period preceding the filing of the adoption petition.

{¶ 5} At the conclusion of the hearing, the trial court determined that appellant's attempts to communicate with W.C. constituted no more than de minimis contact and found that appellant's consent to the adoption was unnecessary. The court further found that adoption was in W.C.'s best interest. The trial court entered a final decree of adoption on February 2, 2010.

{¶ 6} Appellant appeals from the trial court's adoption decree and has advanced three assignments of error for our review.

{¶ 7} The first assignment of error is as follows:

{¶ 8} "In violation of the Servicemember[s] Civil Relief Act, the trial court erred in tolling appellant's time stationed overseas to establish a legal action in accordance with [R.C. 3107.07(a)]." [1]

{¶ 9} In his first assignment of error, appellant contends that the probate court erred in failing to toll the statutory time period preceding the December 2, 2009 adoption petition during the period of his military service. Appellant asserts that the requisite one-year period in R.C. 3107.07(A) should have been tolled pursuant to the Servicemembers Civil Relief Act, codified at Section 501 et seq., Title 50 Appendix, U.S.Code ("SCRA").

{¶ 10} Originally titled the "Soldiers' and Sailors' Civil Relief Act of 1940," the act underwent significant amendment in 2003 when Congress enacted the SCRA. See P.L. 108–109, 117 Stat. 2835. Pursuant to Section 502, Title 50 Appendix, U.S.Code, the purposes of the SCRA are two-fold:

{¶ 11} "(1) [T]o provide for, strengthen, and expedite the national defense through protection * * * to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and

{¶ 12} "(2) [T]o provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."

{¶ 13} Section 526(a), Title 50 Appendix, U.S.Code, provides for the tolling of statutes of limitation during a service member's military service. Section 526(a) states as follows:

{¶ 14} "The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns." [2]

---

1. Although as written, appellant's first assignment of error states that the court improperly tolled the time he spent serving in the United States military, after reviewing the arguments under the assignment, we construe this as a typographical error and presume that appellant intended to assign as error that the trial court erred in failing to toll the one-year statutory period during his military service.

2. Prior to the 2003 amendment, former Section 525, Title 50 Appendix, U.S.Code, provided that the period of military service *"shall not* be included in computing any period * * *." (Emphasis added.) The United States Supreme Court determined that the language of Section 525 was "unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff* (1993), 507 U.S. 511, 514, 113 S.Ct. 1562, 123 L.Ed.2d 229. Notwithstanding the 2003 amendment from

{¶ 15} For purposes of the SCRA, the term "servicemember" is defined as a member of the uniformed services, i.e., the "armed forces." See Section 511(1), Title 50 Appendix, U.S.Code; Section 101(a)(5), Title 10, U.S.Code. In addition, "military service" is defined in Section 511(2), Title 50 Appendix, U.S.Code as:

{¶ 16} "(A) in the case of a servicemember who is a member of the Army, Navy, Air Force, Marine Corps, or Coast–Guard—

{¶ 17} "(i) active duty, as defined in section 101(d)(1) of title 10, United States Code * * *."

{¶ 18} In turn, Section 101(d)(1) defines "active duty" as "full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned."

{¶ 19} The issues presented in this assignment of error require our interpretation of provisions of the SCRA. In reviewing legislative enactments and interpreting statutory authority, an appellate court applies a de novo standard of review. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8.

{¶ 20} Generally, courts have determined that the SCRA is to be "liberally construed" to "protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Ford v. Ford*, Montgomery App. No. CA 10570, 1988 WL 15651, *2, citing *Boone v. Lightner* (1943), 319 U.S. 561, 576, 63 S.Ct. 1223, 87 L.Ed. 1587; *Ludwig v. Anspaugh* (Mo.1990), 785 S.W.2d 269, 271. In addition, the express language of the SCRA makes certain that the tolling of a statute of limitations pursuant to Section 526(a) is "unconditional." See *Bickford v. United States* (1981), 228 Ct.Cl. 321, 656 F.2d 636, 639. "The broad, unqualified, and mandatory language of [the tolling statute] leaves little room for * * * oversight in its application * * *." *State ex rel. Estate of Perry* (Mo.App.2005), 168 S.W.3d 577, 584–585, quoting *In re A.H. Robins Co., Inc.* (C.A.4, 1993), 996 F.2d 716, 718. The only critical factor is military service, and once that circumstance is shown, the period of limitation is automatically tolled for the duration of the service member's service. Id. See also *Ricard v. Birch* (C.A.4, 1975), 529 F.2d 214, 217.

---

"shall not" to "may not," the change in language did not render the tolling provision discretionary, as amended Section 526(a) "clearly provides that the time that a servicemember is in military service is excluded from any period of limitations." *Walters v. Nadell* (2008), 481 Mich. 377, 383, 751 N.W.2d 431. See also *Cronin v. United States* (C.A.Fed.2010), 363 Fed.Appx. 29, fn. 1 (noting that the amended tolling provision "was not substantially changed" from the prior version).

**■** . {¶ 21} Our review of the record indicates that appellant did not raise the applicability of Section 526(a) of the SCRA to the trial court. General principles of appellate review provide that a party is precluded from raising new issues or legal theories for the first time on appeal. *Estate Planning Legal Servs., P.C. v. Cox,* Butler App. Nos. CA2006–11–140 and CA2006–12–141, 2008-Ohio-2258, 2008 WL 2004477, ¶ 17.

{¶ 22} Notwithstanding his failure to raise the issue below, we find that appellant has not waived the applicability of the tolling provision on appeal. In *Ricard,* the Fourth Circuit Court of Appeals determined that the general rule of nonreviewability for issues raised for the first time on appeal did not apply to Section 526(a), which had been "overlooked" by the trial court. 529 F.2d at 216. A similar analysis was employed by the Supreme Court of Connecticut in *Campbell v. Rockefeller* (1948), 134 Conn. 585, 588–589, 59 A.2d 524. The Supreme Court of New Hampshire has also determined that because the tolling provision of the SCRA is mandatory, a service member may raise the issue of the statute's application for the first time on appeal. *Levesque v. Levesque* (1993), 137 N.H. 638, 640, 631 A.2d 925. Based upon the foregoing authority, we find that appellant's arguments with respect to this issue are properly before this court.

**■** {¶ 23} Turning our attention to the merits of his claim, appellant argues that the tolling provision applies to the time period specified in R.C. 3107.07(A). That provision provides that consent to adoption is not required of "[a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor * * * *for a period of at least one year* immediately preceding * * * the filing of the adoption petition * * *." (Emphasis added.)

{¶ 24} Appellee contends that the tolling provision does not apply to R.C. 3107.07(A), as the one-year period specified in the statute is not a "traditional" statute of limitations. The parties have not cited any cases from Ohio with regard to this issue. Based upon our research, the question appears to be one of first impression in Ohio.

{¶ 25} Appellant cites *In re Adoption of J.D.P.* (Okla.Civ.App.2008), 198 P.3d 905, in support of his contention that the time period in R.C. 3107.07(A) is subject to the tolling provision. *In re J.D.P.* involved the application of Section 526(a) to two sections of an Oklahoma adoption statute that provided that consent to adoption was not required from a natural parent "who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child," willfully failed to contribute to the child's support and/or failed to establish or maintain a positive relationship with

the child. Id. at 906. In *In re J.D.P.*, the child's father, who was in active military service overseas during the relevant statutory time period, asserted at the adoption hearing that the SCRA applied to toll the time period in the statute. Id. The trial court agreed, concluding that the SCRA tolled the statute while the child's father was actively serving in the military. Id. This effectively prevented the petitioners, the child's mother and stepfather, from proving the time-frame element in the statute. Id. As a result, the trial court dismissed the adoption petition. Id.

{¶ 26} The court of appeals upheld the trial court's determination, concluding that the court properly found that the SCRA was applicable while the child's father was in active military service. Id. at 907. Noting that the tolling provision was "unconditional" and "automatic," the court made reference to the purposes of the SCRA and found that tolling was mandatory because the relevant time frame for showing the natural father's lack of parental effort, support, and involvement occurred while he was deployed. Id. at 907. The court was not persuaded by the petitioners' argument that the SCRA should not operate as a "blanket shield" to relieve a service member's responsibilities in connection with the adoption statute and noted that it would "not read exceptions" into the statute. Id.

{¶ 27} In the case at bar, the relevant time period for demonstrating appellant's lack of contact with W.C. was during the period of December 2, 2008, through December 2, 2009. The record indicates that appellant was deployed to Japan on or about December 9, 2008, only seven days after the requisite statutory time period commenced. As a result, we find the reasoning in *In re J.D.P.* persuasive and conclude that the tolling provision of the SCRA is applicable to R.C. 3107.07(A). Although the one-year time period in R.C. 3107.07(A) is not a traditional statute of limitations, the tolling provision was "intended to modify not only those statutes properly called statutes of limitations, by which times are fixed for the bringing of actions, but statutes creating a right of action which did not exist independently of the statute where the time for bringing such an action is limited in some way or a condition precedent is imposed by statute." *Worlow v. Mississippi River Fuel Corp.* (Mo.1969), 444 S.W.2d 461, 464. In addition, the phrase "any period * * * limited by law * * * for the bringing of any action or proceeding," from which the period of military service is to be excluded, is broad enough to include every form of action in which a service member's rights are affected. See *Parker v. State* (N.Y.Cl.Ct.1945), 185 Misc. 584, 57 N.Y.S.2d 242 (interpreting former Section 525 of the SCRA). We find that the broad language of the statute encompasses an adoption proceeding brought under R.C. 3107.07(A), in which the fundamental rights of a natural parent are permanently terminated.

{¶ 28} Our conclusion is also supported by cases from other jurisdictions in which courts have liberally construed Section 526(a) to allow for the tolling of statutory time periods that are not specifically designated as statutes of limitation under state law. See, e.g., *Worlow*, 444 S.W.2d at 461 (applying the tolling provision to a wrongful-death statute); and *Estate of Perry*, 168 S.W.3d at 577 (concluding that the tolling provision applied to the presentment of a will in a probate action). We further find our determination in this case to be consistent with the underlying purpose of the tolling provision in "setting aside the obligations of a soldier so that the soldier may devote his or her energies to military service without having to worry about obligations back home." *Estate of Perry* at 587.

{¶ 29} Based on the foregoing, we conclude that Section 526(a) of the SCRA applies to the statutory time period in R.C. 3107.07(A). The application of the tolling provision is mandatory and should have been applied by the trial court in determining whether appellant's consent to W.C.'s adoption was required.

{¶ 30} Appellant's first assignment of error is sustained.

{¶ 31} The second assignment of error is as follows:

{¶ 32} "The [trial] court erred in retroactively applying the new de minimis contact standard in [R.C. 3107.07(A)]."

{¶ 33} In his second assignment of error, appellant argues that the trial court erred, as a matter of law, in retroactively applying the amended version of R.C. 3107.07(A) to the entire one-year period preceding the December 2, 2009 adoption petition. When an inquiry is purely a question of law, an appellate court need not defer to the judgment of the trial court. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 51–52, 673 N.E.2d 628.

{¶ 34} The Supreme Court of the United States has recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551; *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. A parent's right to raise a child is an essential civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. The Ohio Supreme Court has determined that the termination of parental rights is the family-law equivalent to the death penalty in criminal law. *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. Therefore, parents "must be afforded every procedural and substantive protection the law allows" before depriving the parent of the right to consent to the adoption of their child. Id., quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45; *VanBremen v. Geer*, 187 Ohio App.3d 221, 2010-Ohio-1641, 931 N.E.2d 650, ¶ 19. The termination of a natural

parent's right to object to the adoption of their child requires strict adherence to the controlling statutes. *VanBremen* at ¶ 20.

{¶ 35} Effective April 7, 2009, amended R.C. 3107.07(A) provides that consent to adoption is not required by a parent of a minor when the court finds by clear and convincing evidence that the parent "has failed without justifiable cause *to provide more than de minimis contact* with the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition * * *." (Emphasis added.)

{¶ 36} Prior to April 7, 2009, R.C. 3107.07(A) provided that consent to adoption was not required by a parent of a minor when the "[c]ourt finds * * * that the parent has failed without justifiable cause *to communicate* with the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition * * *." (Emphasis added.)

{¶ 37} In this case, the trial court retroactively applied the revised, de minimis contact standard to the entire one-year period preceding the date of the filing of the adoption petition. The test for determining whether a statute may be applied retroactively was summarized by the Ohio Supreme Court in *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 352–353, 721 N.E.2d 28:

{¶ 38} "Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154, 162. The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' *Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749."

{¶ 39} In determining whether a statute is permitted to be applied retroactively, a court must first find that the general assembly expressly intended the statute to be retroactively applied. Id. at 353, 721 N.E.2d 28. If so, the court "moves on to the question of whether the statute is substantive, rendering it *unconstitutionally* retroactive, as opposed to merely remedial, [rendering it constitutionally retroactive]." Id. at 353, 721 N.E.2d 28. (Emphasis sic.) Remedial statutes are ones that "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *State v. Cook* (1998), 83 Ohio St.3d 404, 411, 700 N.E.2d 570.

{¶ 40} The Fifth Appellate District recently addressed the propriety of a trial court's retroactive application of R.C. 3107.07(A). In *VanBremen*, 187 Ohio App.3d 221, 2010-Ohio-1641, 931 N.E.2d 650, ¶ 18, the court of appeals held that the trial court erred as a matter of law in giving the amended version of R.C.

3107.07(A) retroactive application and in applying it to the entire one-year period preceding an adoption petition filed on July 14, 2009.

{¶ 41} After applying the two-prong test for the retroactive application of a statute, the court of appeals in *VanBremen* determined that the general assembly did not expressly provide for the retroactive application of the amended version of R.C. 3107.07(A).[3]  Id. at ¶ 28.  The court further found that the revised statute was not merely remedial in nature, as it "places a lesser burden on the petitioner who seeks to adopt the child without the consent of the natural parent and conversely places a higher burden on the natural parent who opposes the petition."  Id. at ¶ 32.  Specifically, the prior version provided that any contact whatsoever was sufficient to require parental consent to an adoption, while the revised version requires that contact be more than de minimis.  Id.  As a result, the court of appeals determined that the trial court should have applied the "failure to communicate" standard from the starting date of the one-year period, July 14, 2008, until the effective date of the revised statute, April 7, 2009.  Id. at ¶ 33.

{¶ 42} In applying the Fifth Appellate District's rationale to the case at bar, we likewise conclude that the revised version of R.C. 3107.07(A) cannot be applied retroactively and that the trial court erred, as a matter of law, in applying the de minimis contact standard to the entire one-year period preceding the December 2, 2009 petition.  The trial court should have applied the former failure-to-communicate standard from December 2, 2008, until April 7, 2009, the effective date of the revised, de minimis contact standard.

{¶ 43} Appellant's second assignment of error is sustained.

{¶ 44} The third assignment of error is as follows:

{¶ 45} "The trial court erred in finding, by clear and convincing evidence, appellant failed without justifiable cause to maintain sufficient contact with W.C. pursuant to [R.C. 3107.07(A)]."

{¶ 46} Appellant's final assignment of error challenges the trial court's findings of fact with regard to its conclusion that appellant's consent to W.C.'s adoption was not required.  In our disposition of appellant's first and second assignments of error, we concluded that the trial court should have applied the tolling provision of the SCRA and erred in its retroactive application of the amended version of R.C. 3107.07.  In light of these determinations, we do not reach the merits of his third assignment of error regarding the propriety of the trial court's factual findings.

---

**3.**  See also *In re A.J.B.*, Butler App. No. 2008–12–306, 2009-Ohio-2200, 2009 WL 1278433, fn. 1 (similarly noting that the legislature did not expressly provide for the retroactive application of the amended version of R.C. 3107.07(A)).

{¶ 47} The judgment of the trial court is reversed, and this matter is remanded to the trial court to apply the tolling provision of the SCRA to R.C. 3107.07(A) during the period of appellant's active military service. On remand, the trial court is also instructed to consider the tolling provision in connection with the proper application of R.C. 3107.07(A) to the time period preceding the date of the filing of the adoption petition.

Judgment reversed
and cause remanded.

YOUNG, P.J., and RINGLAND, J., concur.