[Cite as *In re N.C.*, 2016-Ohio-3243.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: N.C.

C.A. No.     28074

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 13-10-689

DECISION AND JOURNAL ENTRY

Dated: June 1, 2016

WHITMORE, Judge.

{¶1}   Rai'Nahja W-J. appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, N.C., and placed her in the permanent custody of Summit County Children Services ("CSB").  This Court affirms.

I

{¶2}   Rai'Nahja W-J. ("Mother") and Derell C. ("Father") are the parents of N.C., born July 16, 2012.  At the time of the permanent custody hearing, Father voluntarily surrendered his parental rights to N.C.  He is not a party to the present appeal.

{¶3}   CSB became involved with the family and held a team meeting following two incidents that took place in the fall of 2013:  a psychiatric hospitalization of Mother as a result of threats to harm herself and her child, and a domestic violence incident in which Father allegedly pushed Mother down a flight of stairs while she was holding N.C.  As a result of the team

meeting, CSB filed a complaint in juvenile court on October 23, 2013, alleging that N.C. was an abused, neglected, and dependent child. The trial court granted emergency temporary custody to the agency.

{¶4} Upon adjudication and disposition, N.C. was determined to be a dependent child and was placed in the temporary custody of CSB. The trial court adopted a case plan which required both parents to address their mental health issues, engage in anger management, and attend parenting classes.

{¶5} Shortly after adoption of the case plan, Mother was convicted of two counts of felonious assault and two counts of misdemeanor assault in April 2014. She was sentenced to two years of incarceration in total. On July 15, 2015, CSB moved for permanent custody of N.C. Following a hearing on the motion, the trial court granted permanent custody to CSB and terminated Mother's parental rights to N.C. Mother now appeals and assigns one error for review.

II

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION TO GRANT THE STATE'S MOTION FOR PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} Mother contends that the judgment of the trial court is not supported by clear and convincing evidence and is against weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, the child or another child of the same parent has been

adjudicated abused, neglected, or dependent three times, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶7} In support of its decision granting permanent custody to CSB, the trial court found that N.C. had been in the temporary custody of CSB for at least 12 of the prior 22 months and that permanent custody was in the best interest of the child. On appeal, Mother challenges only the best interest determination of the trial court and contends that the child should have been placed with a family member instead of being placed in the permanent custody of the agency.

{¶8} When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D)(1): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e). "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶9} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the child. The record indicates that Mother visited N.C. consistently from October 2013 until April 2014 when she was incarcerated. Mother's visits

were initially supervised and were later changed to monitored status, but never expanded beyond that. The caseworker attended most of the visits. She said Mother was affectionate towards N.C., but that Mother observed more than engaged with her child. During Mother's incarceration, the prison provided her with mental health treatment and, according to the caseworker, put her on a wait list for parenting and anger management programs. At the time of the permanent custody hearing, Mother was still incarcerated.

{¶10} Father initially attempted to work on his case plan, and he also maintained a relationship with N.C. by regularly visiting her. However, by the summer of 2015, he had lost his job, lost his housing, and ceased contact with the caseworker. Eventually, Father decided to voluntarily surrender his parental rights.

{¶11} The record includes little evidence that other friends or relatives maintained a relationship with N.C. through visits while she was in the custody of the agency. There was evidence of only one visit by a maternal aunt, and she was not otherwise involved.

{¶12} The wishes of the child were conveyed by the guardian ad litem. The guardian described N.C. as a pleasant young lady with a mind of her own. She said N.C. was doing very well in her current foster home, is affectionate with her foster family, and seems happy and healthy. She likes her nursery school and has a good appetite. The guardian ad litem concluded that it would be in the best interest of the child to be placed in the permanent custody of CSB. She stated that she "absolutely" would not recommend placing her back with Mother.

{¶13} The third best interest factor requires consideration of the custodial history of the child. N.C. resided with Mother from her July 16, 2012 birth until October 23, 2013. At that time, N.C. was placed in a foster home. On November 4, 2013, she was moved to the home of her paternal aunt. On Thanksgiving Day, November 28, 2013, a physical argument took place

between Mother and the paternal aunt. N.C. had to be removed by police, and she was returned to her foster home. Because Father was making progress, temporary custody was extended and N.C. remained with her foster family, so that Father could continue to work on his case plan objectives. Because the foster family was not interested in becoming a permanent placement for the child, when Father stopped making progress on his case plan objectives, N.C. was placed with her respite family as they were willing to consider providing the child with a permanent placement. That move took place on September 4, 2015.

{¶14} Altogether, N.C. resided with Mother for 15 months. She was in the temporary custody of CSB for 24 months. During that period of temporary custody, N.C. resided with her paternal aunt for three weeks and was in foster care for the remainder of that time. At the time of the permanent custody hearing, Mother had not seen her child for 20 months.

{¶15} As to the fourth best interest factor, there was evidence before the trial court that the child was in need of a legally secure permanent placement. The caseworker testified that N.C. had done well in adjusting to both of her foster homes, but emphasized that N.C. now needs permanence to know that she fits and belongs somewhere. She believed that permanent custody would be in the best interest of the child. The trial court concluded that an award of permanent custody was the only way to accomplish permanence for the child.

{¶16} Mother contends that the trial court should have granted legal custody to a relative instead of granting permanent custody to the agency. Caseworker Tammie Sumpter and social worker Julie Kirven both testified regarding efforts to place N.C. with a relative. They explained that placements were attempted with two of the three relatives named by Mother in her appellate brief, but neither placement was successful. One of the placements was terminated by a physical argument that involved the child and the other by an inability of the partners to resolve their

differences regarding parenting. No other relatives were found to be willing and suitable. Significantly, the record demonstrates that no relative came to court to testify regarding his or her interest and willingness to be considered as a legal custodian, nor did any relative file a motion for legal custody of N.C. as required by R.C. 2151.353(A)(3). Furthermore, there is no evidence that any relative - aside from the parents - attended or sought regular visitation with the child.

{¶17} The Ohio Supreme Court has explained that in considering an award of permanent custody, the juvenile court need not determine that the termination of parental rights was "the only option." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 64. Nor must the court find that no suitable relative was available for placement. *Id.* Rather, R.C. 2151.414 requires that the juvenile court weigh all the relevant factors and "find the best option for the child." *Id.* "The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id. See also In re G.S.*, 9th Dist. Summit No. 27967, 2016-Ohio-1197, ¶ 33. Mother has not demonstrated that the trial court erred in failing to grant legal custody to a relative.

{¶18} To the extent that Mother challenges the statute governing permanent custody in terms of how it assesses the interests of both parent and child, we note that she did not preserve the issue by raising it before the trial court and we will not address this matter for the first time on appeal. *See In re Adoption of W.C.*, 189 Ohio App.3d 386, 2010-Ohio-3688, ¶ 21 (12th Dist.).

{¶19} Upon consideration, this Court concludes that the trial court did not clearly lose its way and create a manifest miscarriage of justice when it found that permanent custody was in

the child's best interest. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The trial court did not err in terminating Mother's parental rights and in placing N.C. in the permanent custody of CSB. Mother's sole assignment of error is overruled.

### III

{¶20} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.